# CHARLESTON.

JAMES C. DAVIS, DIR. GEN. v. LAWRENCE OIL & GAS CO.

Submitted May 8, 1923.   Decided May 22, 1923.

1.  CARRIERS—*Party Placing Cars on Siding with no Shipping Directions Liable for Demurrage.*

    Where a railway, at defendant's request, placed its cars on its siding, to be loaded with lumber by the owner thereof, and the lumber is loaded thereon but no shipping directions are given by either the owner of the lumber or by the defendant, in consequence whereof the cars are permitted to remain on the siding and demurrage charges accrue therefor, the party at whose instance they were placed there is respon-

sible for the demurrage charges, and recovery may be had in the common counts in assumpsit.  (p. 79).

2.   SAME—*Right to Recover for Demurrage not Affected by Fact That Material in Cars Does Not Conform to Contract.*

Such right of recovery is not affected by the fact that the loaded lumber does not conform to the contract made between the vendor and purchaser.  p. 79).

3.   APPEAL AND ERROR—*Verdict on Conflicting Evidence not Disturbed, Unless Strongly Indicative of Passion, Prejudice, or Improper Influence.*

The verdict of a jury, based upon conflicting evidence, will not be set aside, unless the evidence so strongly preponderates against the verdict as to indicate that the jury was moved by passion, prejudice, or some other improper influence. (p. 79).

Error to Circuit Court, Kanawha County.

Action by James C. Davis, Director General, against the Lawrence Oil & Gas Company.  Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Henry S. Cato,* for plaintiff in error.

*Fitzpatrick, Brown & Davis* and *C. W. Strickling,* for defendant in error.

MEREDITH, JUDGE:

Plaintiff sued in assumpsit to recover $964.00, principal and interest of demurrage charges on two of his flat cars, and recovered the full amount claimed.  Defendant seeks a reversal.

Plaintiff operates an interstate railway, system, including a branch line extending from Cabin Creek Junction, at the mouth of Cabin Creek, up that creek to its head-waters. Defendant at the time this controversy arose was in the oil and gas drilling business and operated a lease secured from the plaintiff, covering certain portions of the railroad right of way, and in the vicinity of Dawes Station.  In order to drill its wells defendant constructed rigs, and purchased heavy rig timbers, usually cut to pattern, from different lumber companies.  One such company was the Haywood Lumber Company, which in 1918 was cutting and milling

lumber near Oakley Siding, a station about two miles above Dawes Station.   This action involves the demurrage charges on two flat cars which the Haywood Lumber Company loaded with rig timbers during the first week in March, 1918, on Oakley Siding, and which remained at that point loaded and unmoved until April 27, 1918.   The essence of the contention is that while plaintiff claims that the cars were loaded solely at the instance of the defendant, the purchaser and consignee, and were subject to its orders alone; the defendant claims that the cars were not placed on the siding at its direction, that it did not in .fact order the lumber loaded upon them and that if any one is responsible for demurrage charges it must be the Haywood Lumber Company, the shipper.

In the declaration, consisting of the common counts and one special count, plaintiff bases his case upon his alleged contract of carriage with defendant, and throughout the evidence adduced by him he does not recognize that any contractual relationship ever existed between him and the Haywood Lumber Company.

Two main facts are substantially conceded by both parties. In the first place, it is certain that the two cars were placed on Oakley Siding during the first few days in March, 1918, perhaps March 7th, that being the date indicated on plaintiff's demurrage statement.   Further, the fact is not controverted that when about to haul the cars to their destination, near Dawes, the plaintiff was instructed by an agent of defendant not to move them; in consequence of which they remained on the siding until April 27th, when they were unloaded by defendant's employees.

It is upon the circumstances which gave rise to the above uncontroverted facts which the parties so materially differ.

Plaintiff produced three witnesses who were employed by his company in the freight department in the Cabin Creek district when the cars were placed upon the siding.   Two of them, Hastings, the chief clerk at Cabin Creek, and Fout, the yardmaster at the same place, tell of the ordering of the cars by Bumpus, an employee of defendant.   Hastings testifies that about March 1st, Bumpus, who had formerly

ordered cars for the defendant company, directed that plaintiff place two flat cars on Oakley Siding to be loaded with rig timbers. Hastings, in turn, transmitted the order to Fout, whose business it was to place cars as directed by the chief clerk. Before doing so, however, he also was approached by Bumpus who requested that the cars be placed without delay. There seems to have been no delay. He says that he withdrew the cars from a Huntington local freight and forwarded them to the siding about March 1st in a train in charge of conductor Crawford, also a witness. They were as promptly loaded by the lumber company, but when Crawford returned with his train to haul the cars to their destination near Dawes he was met by Bumpus who instructed him not to move the loaded cars. On the following morning Bumpus notified Fout also not to move the timber, giving as his reason that "We are in a law-suit or are going to have a law-suit with another company and we are not ready to unload it." As this trial occurred four years subsequent to the happening of the events narrated, these witnesses could not recall in detail every circumstance connected with the transaction; but as to all the main facts, the ordering of the cars by Bumpus, his request for their immediate placement, and his subsequent directions not to move them, there is no uncertainty whatever. By the witness Hastings plaintiff proved the method of computing demurrage, especially with reference to the two cars in question. There is in fact no controversy on this phase of the case.

There were no bills of lading or written shipping instructions of any kind to throw light on the carriage contract.

The cross-examination of defendant's counsel failed to weaken to any substantial degree the direct testimony outlined above. At one point counsel attempted to show that it would have been impossible for Fout to have withdrawn the flat cars from the Huntington local for use on March 1st, because of the fact that at least one of the same cars had been used two days earlier to haul a prior shipment of rig timbers from the same siding. Counsel also probably had it in mind to show that the ordering of cars of which the plain-

tiff's witnesses spoke, was for the earlier shipment. The attempt, however, proved little. Neither Fout nor Hastings testified that the cars were ordered on the first day of March, but "about the first of March." As stated, the demurrage statement showed the date to be March 7th.

E. D. Haywood, who was manager and controlling partner of the Haywood Lumber Company in 1918, as witness for plaintiff, explained his sales agreement with A. C. Lawrence, manager of defendant company. He testified that Lawrence had told him orally that he would probably need about nine rigs, and that he would need six or seven as fast as he could get them. The agreement was never reduced to writing, and he thinks there was no letter giving the number and dimensions of the pieces required for each rig as needed, but that the shipments were cut to a standard rig pattern. In cross-examination, counsel made an effort to show that defendant ordered 16-foot rigs for certain wells, but of this Haywood had no knowledge. He referred counsel to his bookkeeper, Brown, for specific information on this point. This introduces for the first time the defendant's alleged reason for refusing the timber. It claims that the shipment was not the size ordered. We will advert to this matter later. It is as to the ordering of the cars that Haywood's testimony is most convincing. He states that he made it clear to Lawrence that he would have nothing to do with the cars or the billing, and that Lawrence stated "You do not need to worry about the cars. I will have them set in and you load them," and further, that he didn't want Haywood to have anything to do with the billing, that the cars would have to be unloaded along the main line, and that he, Lawrence, would look after it.

As a matter of fact, five or six rigs were shipped and accepted, and this action seems to involve the rig known as No. 7.

J. W. Crews, also a partner in the Haywood Lumber Company, and in charge of the mill, testified that Bumpus talked to him, trying to hurry up the shipment, and that he, Crews, personally oversaw the loading of the cars. After identify-

ing the itemized statement for the timber by the bookkeeper, the plaintiff rested his case.

Defendant introduced two witnesses, A. C. Lawrence and C. J. Bumpus. Their testimony consists chiefly of denials, but certain parts should be noted.

Lawrence's interpretation of his oral agreement with Haywood is that while he stated that as many as nine rigs might be required, nevertheless, no rigs were to be shipped except as ordered from time to time, and that the rig in question never was ordered or required. His testimony is that Bumpus had been relieved of his position as manager of the Dawes operations and was employed only on particular occasions to do certain special jobs. One of these special jobs is alleged to have arisen when Lawrence was notified that the cars in question were loaded on the siding, whereupon he sent Bumpus to notify the Haywood Lumber Company that defendant had not ordered the rig and did not want it, and to notify the railway company not to move the cars from the siding. He says he sent Bumpus upon this mission some time between March 1st and March 6th, 1918. Lawrence further stated that the two cars had been in defendant's general use in miscellaneous hauling during the month of February, and were released on February 27th, at the urgent request of the railway company. He then explained what finally became of the rig timbers. The railway company was insistent at all times, of course, that the cars be released for service, and on April 27th, at the request of Mr. Mehurin, of the plaintiff company, and on its behalf and at its order, Lawrence had his employees unload the cars and release them. In the meantime, the Haywood Lumber Company had sued defendant for the purchase price of the rig. About one year later, and before a trial, defendant transmitted that purchase price to plaintiff's attorney, plaintiff says in satisfaction of the claim. Defendant says it was in no sense a recognition of the claim, but that in order to replace a rig which had burned he purchased the timber from the Haywood Lumber Company's attorney; it being agreed at the time between counsel for the railway company and de-

fendant that this purchase should not prejudice either party in the demurrage controversy.

The basic points in his testimony are: (1) his denial that he agreed to take care of the furnishing of the flat cars, his explanation being that he merely agreed to help the Haywood Lumber Company secure them; (2) his denial that he authorized Bumpus to order the cars in question, though he admits having at times sent Bumpus to make inquiry of the trainmen as to certain placements; and (3) his denial of the order of the rig timbers loaded upon the cars.

Bumpus' testimony also is chiefly denial. He says he was on Cabin Creek on February 24th, March 1st, and March 6th, but on neither occasion did he either order cars from the railway company or tell Crews to hurry up the shipment of timber. His only business there so far as this controversy is concerned was his trip of March 6th, in which he transmitted Lawrence's directions that the cars be not moved from the siding.

In rebuttal, Brown, the bookkeeper of the lumber company, denied the receipt of any written orders from the defendant.

Further than the testimony we have outlined, we find nothing to enlighten us as to the merits of defendant's refusal to accept the rig, because of its size, or of the Lumber Company's claim for the purchase price, but these matters are of little relevancy. The case for the plaintiff was tried upon the theory, and the jury evidently so found, that the Haywood Lumber Company was a complete stranger to the transaction. If it were a stranger, if all of the arrangements for the cars were made by defendant, it would of course be no concern of plaintiff whether the Haywood Lumber Company loaded the cars or whether any one loaded them. It would be a clear case of a contractor holding cars for unloading, as provided by Rule 1 of the National Demurrage Rules, approved by the Public Service Commission of this State: "Cars held for or by consignors or consignees for loading, unloading, forwarding instructions or any other purposes, are subject to these demurrage rules."

The jury having so decided, our only purpose in this case

can be to determine whether the case was properly submitted to it under the pleadings, evidence, argument and instructions.

There is no valid objection to the pleadings. Defendant does object that the declaration does not aver delivery to the point of destination and the failure to unload within the "free time" of 48 hours at that place. Such averments were entirely unnecessary. Under plaintiff's theory of the case these cars were under the direction and control of defendant at all times. That control was not limited to the point of destination, as is perhaps usual in ordinary shipping transactions.

Objection is entered also to the opening statement of plaintiff's counsel in the final argument to the jury. Defendant's brief says counsel for plaintiff made a few brief remarks, consuming some five minutes of time, in which the points relied on were not presented, and then left the defendant to reply. Irrespective of the merits of such a contention, we could not consider the objection here. The record does not show either the extent of the argument or the points raised, and certainly mere length of time consumed would not be a controlling consideration.

We have already detailed the evidence; there is no contention that any material portion was erroneously admitted, or that any testimony offered by defendant was improperly refused. This is clearly a case of conflicting testimony, and it is not for us to say that the jury's finding was unwarranted.

Defendant offered four instructions, one of which, No. 2, was given. No. 1 was peremptory and was, of course, properly refused. No. 3 signified that there was evidence to support the proposition that Bumpus was acting as agent for the Haywood Lumber Company in ordering the two flat cars. Defendant points out no such evidence in his brief, and we find none. So much of instruction No. 4 as might properly have gone to the jury was sufficiently covered by instruction No. 2, given. Defendant was not prejudiced by the giving or refusal of instructions.

Finding no error, the judgment is affirmed.

*Affirmed.*