59 So.2d 426

**TEXAS & P. RY. CO. v. GREAT NAT. OIL CORP. OF LA.**
No. 40424.

April 28, 1952.

Rehearing Denied June 2, 1952.

Cook, Clark & Egan, Shreveport, for plaintiff-appellant.

W. M. Phillips, W. S. Waller, Shreveport, for defendant-appellee.

HAMITER, Justice.

In this cause the Texas and Pacific Railway Company, a common carrier railroad engaged in interstate and intrastate commerce, seeks to recover from the Great National Oil Corporation of Louisiana the sum of $5409.53, representing demurrage and hazardous charges, along with accrued Federal taxes, allegedly due by the defendant in connection with its loading of certain tank cars.

The district court sustained an exception of no cause of action and dismissed the suit. Plaintiff is appealing from the judgment.

In considering the exception the following facts, disclosed by allegations of the original and supplemental petitions and by the attached documents, are to be accepted as true and correct.

The defendant owns a railroad loading or spur track at Ida, Louisiana, situated upon the property of plaintiff, which has a capacity of approximately 10 tank cars. During a stated period of time several dozen tank cars were loaded by defendant on its spur track for the account of Anchor Petroleum Company. After the loading, plaintiff, pursuant to the directions of defendant, removed the cars from the spur track to its team track where they were held pending shipping instructions from defendant. Bills of lading affecting the cars were issued by the defendant, and they were signed by plaintiff through its general agency in Shreveport. These bills of lading were delivered to the consignees and are not in plaintiff's possession. After the cars were removed from defendant's spur track, and until shipping instructions were furnished to plaintiff by defendant, there accrued demurrage and hazardous storage charges (under the terms of applicable tariffs), together with Federal taxes, which total the amount for which recovery is sought. The shipping instructions so furnished by defendant to plain-

tiff respecting the cars now involved were in the form of orders executed by parties (as shippers) other than the defendant, and in none was the latter named as the consignee.

Admitting these facts, for the purpose of the exception, defense counsel insist that a cause of action has not been stated. They argue that since the defendant is neither consignor nor consignee of the shipments plaintiff can recover the demurrage and other charges only after a showing, which has not been made in the petition, that some contractual relationship existed with defendant or that the latter interfered or intermeddled in the affairs of others in such fashion as to render it liable. In this connection they recognize the rule given in 13 C.J.S., Carriers, § 344, page 809, as follows: "A person, who is neither the consignor nor consignee, may assume liability for demurrage charges by express contract or undertaking, or by accepting or exercising dominion over the shipment; * * *."

Plaintiff's counsel rely upon this principle of law for the success of the action. While apparently conceding that the petition does not allege the existence of a contract between the litigants, they urge that the allegations are sufficient to show defendant's assumption of liability for the charges by and through an exercising of dominion over the shipments. As to this they direct attention to the alleged facts (admitted by the exception) that defendant loaded the cars, instructed the plaintiff when to remove them from the spur track, and furnished the shipping orders executed by third persons.

Whether conceded or not, no contractual relationship whatever is shown by plaintiff's pleadings. It is not even asserted therein that the tank cars were placed on the spur track for loading at the request of defendant. The defendant, therefore, is not liable unless its above mentioned acts, to which our attention is particularly called, were responsible for a detention of the cars on plaintiff's team track and resulted in the accrued charges.

Clearly the mere loading of the tank cars had nothing to do with the detention. Also, defendant's furnishing of shipping orders executed by third persons had no such effect. No allegation is made in the petition that defendant directed a holding of the cars on the team track until it delivered the shipping orders, or that it was under any duty, contractual or otherwise, to deliver them. Neither does it appear that defendant's ordering a removal of the cars from its spur track to plaintiff's team track constituted an exercising of dominion over the shipments such as would render it liable for the charges. Obviously, it so acted only with the view of preventing a curtailment of operations in the conduct of its business. According to a shipping order attached to the petition, executed by Anchor Petroleum Company and naming itself therein as the consignee, 18 loaded

tank cars were released for shipment on January 18, 1949. Defendant's preparing all of these cars for shipment would have been impossible if some of them, on being loaded, had not been removed to plaintiff's team track; because, as shown by plaintiff's petition, the loading or spur track of defendant had a capacity of approximately 10 cars.

The only decision cited by counsel for plaintiff is Davis, Director General v. Lawrence Oil & Gas Company, 94 W.Va. 73, 117 S.E. 692, 30 A.L.R. 163, the following syllabus from which they quote:

"Where a railway, at defendant's request, placed its cars on its siding, to be loaded with lumber by the owner thereof, and the lumber is loaded thereon, but no shipping directions are given by either the owner of the lumber or by the defendant, in consequence whereof the cars are permitted to remain on the siding and demurrage charges accrue therefor, the party at whose instance they were placed there is responsible for the demurrage charges, and recovery may be had on the common counts in assumpsit."

The cases are easily distinguishable in that here no showing is made of a request by defendant for the placing of the cars on its spur track.

Our conclusion is that the district court correctly sustained defendant's exception of no cause of action.

For the reasons assigned the judgment appealed from is affirmed.